**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HENRY SEARCY, JR., | |
| Plaintiff, | Case No. 25-cv-1012 (JMC) |
| v. | |
| BROOKE ROLLINS,[1] *Secretary of Agriculture, et al.,* | |
| Defendants. | |

**MEMORANDUM OPINION**

This is pro se Plaintiff Henry Searcy's third lawsuit against officials at the U.S. Department of Agriculture (USDA) related to his employment at the agency. ECF 1. He lost the prior two suits, but undeterred, proceeded to file another lawsuit regarding the same factual circumstances, with an expanded set of allegations and a slightly different set of legal claims. The third time is not the charm. As for Searcy's tort claims, courts—including this one—have adjudicated jurisdictional issues in his prior cases in ways that preclude him from bringing those claims here. Furthermore, the Court concludes that Searcy has failed to state contract and harassment claims. Accordingly, the Court will **GRANT** Defendants' motion to dismiss, ECF 5.[2]

---

[1] Brooke Rollins, the current Secretary of Agriculture, is automatically substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

## I.     FACTUAL BACKGROUND[3]

Searcy worked for USDA in the Office of Advocacy and Outreach (OAO). ECF 1 ¶ 1. In November 2017, USDA announced that certain staff in his office would be "realigned" to the Office of External Affairs (OEA). *Id.* ¶ 2. Searcy argues that his realignment was unlawful because his position, the Coordinator for Chronically Underserved Rural Areas, was required by law to be located within the Rural Development (RD) mission area. *Id.* ¶ 8.

Searcy was told that his responsibilities would not be altered as a result of the move, ECF 1 ¶ 2, but after the realignment experienced tension with his supervisors and coworkers regarding his role within OEA, his duties, and his physical location in the USDA office. The director of OEA, Marie Wheat, told him multiple times that there was no budget available for his OAO tasks, and he was instead required to work on other projects within OEA that were not part of his job description. *See, e.g.*, *id.* ¶¶ 6, 10, 17. He alleges that Wheat and others "conspired" to move his office within the USDA facility "in order to force [him] to perform only OEA duties," *id.* ¶¶ 9, 13, such as "edit[ing], process[ing], and review[ing] RD project announcements," ECF 8 at 7. His office was moved five times within eight months. ECF 1 ¶ 13. At one point, Wheat "kicked in the door" of Searcy's office and yelled at him to "GET OUT" and move to another location. *Id.* He says that as a result of one move, he was required to sit in a "handicap desk"—again allegedly in an effort to force him to complete OEA duties. *Id.* ¶ 15.

Searcy spoke out to his superiors about what he viewed as his illegal realignment and being required to perform tasks that were not part of his job description. After he "expressed his lack of

---

[3] The allegations in Searcy's complaint overlap significantly with those brought in his prior two cases such that those cases contain an accurate statement of most of the factual allegations in this matter. *See Searcy v. United States* (*Searcy I*), No. 23-cv-03166, 2024 WL 2152505, at *1–2 (D.D.C. May 14, 2024), *aff'd*, No. 24-5160, 2025 WL 222308 (D.C. Cir. Jan. 15, 2025) (per curiam); *Searcy v. Vilsack* (*Searcy II*), No. 23-cv-140, 2025 WL 1615705, at *1–2 (D.D.C. June 6, 2025). However, given that Searcy's third complaint includes new details not included in his prior complaints, the Court will recount (in brief) Searcy's allegations, including new details pertinent to his current claims.

interest in performing OEA functions," to Wheat during a performance review, the "meeting became heated," and Wheat stated that she should "MANDATE [him] to perform OEA functions." ECF 1 ¶ 11. He was later marked as AWOL on several occasions for his failure to complete certain assignments, and required by his supervisors to send daily emails accounting for his working hours. *Id.* ¶¶ 12, 32, 45. But Searcy contends that during the periods he was marked AWOL, he was performing his statutorily-mandated OAO duties, rather than the OEA duties to which he was wrongfully reassigned. *Id.* ¶ 53. He contacted human resources about his concerns, but found that his original position description had been "falsified, altered[,] and[] mutilated," such that it stated that he was required to work for OEA rather than the RD Mission Area. *Id.* ¶ 14. He filed a whistleblower complaint about the changes to his position description, *id.* ¶ 15, and in April 2020, his supervisors "removed [his] OAO duties" and "forced [him] to perform OEA functions only." *Id.* ¶ 18.

In response, Searcy filed an Equal Employment Opportunity Complaint (EEO) in April 2020. ECF 1 ¶ 19. In October 2020, Searcy learned that he was being "reassigned"—not simply realigned—to the RD Innovation Center. *Id.* ¶ 22. He believed that the reassignment was illegal and filed a reprisal complaint with the Merit Systems Protection Board (MSPB). *Id.* ¶ 23. He filed a subsequent MSPB complaint in January 2021, *id.* ¶ 27, and another EEO complaint in April 2022, *id.* ¶ 34. In May 2023, Searcy was assigned a new supervisor in the RD Innovation Center, who "required [him] to sign a contract to require him to perform" Innovation Center functions, which included "creat[ing] excel spreadsheets related to the agency's partners and stakeholders." *Id.* ¶ 37. Searcy then filed multiple "dual EEO/harassment" complaints regarding his reassignment and treatment by USDA staff. *Id.* ¶¶ 38, 40, 43, 45. On January 15, 2025, Searcy received a letter

from the USDA's Center for Civil Rights Enforcement, dismissing one of those complaints. *See id.* ¶ 46; ECF 8-2 at 84–89.

## II.    PROCEDURAL BACKGROUND

Searcy has filed two prior lawsuits containing nearly identical factual allegations to those discussed above, save for the details of his filing of the harassment complaints, which appear to be unique to this case. *Compare Searcy v. United States* (*Searcy I*), No. 23-cv-03166, 2024 WL 2152505, at *1–2 (D.D.C. May 14, 2024), *aff'd*, No. 24-5160, 2025 WL 222308 (D.C. Cir. Jan. 15, 2025) (per curiam), *and Searcy v. Vilsack* (*Searcy II*), No. 23-cv-140, 2025 WL 1615705, at *1–2 (D.D.C. June 6, 2025), *with* ECF 1. In *Searcy I*, Searcy brought common-law tort claims for tortious interference with employment, negligent infliction of emotional distress, negligence, and punitive damages. *Searcy I*, 2024 WL 2152505, at *2. Judge Trevor McFadden dismissed the case for lack of subject-matter jurisdiction, finding that Searcy's claims were barred by the existence of an existing remedy under the Federal Employees Compensation Act (FECA), and even if they were not, Searcy failed to exhaust his administrative remedies under the Federal Tort Claims Act (FTCA). *Id.* at *3–4. The decision was affirmed by the D.C. Circuit on appeal. *See Searcy*, 2025 WL 222308, at *1. In *Searcy II*—which was filed before *Searcy I* but decided after—he brought the same four tort claims based on nearly identical allegations. *Searcy II*, 2025 WL 1615705, at *1–2. This Court determined that it lacked subject-matter jurisdiction over Searcy's claims because of the effect of issue preclusion. *Id.* at *6–7. Because the issues of FECA coverage, insufficient FTCA exhaustion, and the existence of other jurisdictional bars under the FTCA to bringing his claims, had all been adjudicated in *Searcy I* before Judge McFadden, this Court found that Searcy was barred from relitigating those issues, and Judge McFadden's decisions on those threshold jurisdictional issues again compelled dismissal. *Id.*

4

Searcy filed the present suit in April 2025. *See* ECF 1. He brings claims for: (1) negligence, (2) intentional infliction of emotional distress, (3) "specific performance," (4) false imprisonment, (5) harassment, and (6) "punitive damage." *Id.* at 41–46. Defendants moved to dismiss. ECF 5. Searcy opposed, although his opposition responded only to Defendants' arguments regarding his "harassment" claim. *See* ECF 8.

## III.   LEGAL STANDARDS

Defendants first move to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is generally "presumed that a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If a court lacks subject matter jurisdiction to entertain a claim, it must dismiss that claim. Fed. R. Civ. P. 12(h)(3). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). When faced with a pro se litigant's complaint, a court must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss, which here includes [Searcy's] opposition to the motion to dismiss and attached exhibits." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). While pleadings by pro se litigants are generally held to less stringent standards than formal pleadings drafted by lawyers, a pro se plaintiff still bears the burden of establishing jurisdiction. *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010).

Defendants also move to dismiss under Rule 12(b)(6). To survive this motion, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pro se complaint must again "be held to less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even a pro se plaintiff "must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011).

## IV.   ANALYSIS

Defendants argue that Searcy's complaint should be dismissed in its entirety. As to the tort claims, they argue that the Court lacks subject-matter jurisdiction over these claims because collateral estoppel prohibits Searcy from relitigating threshold jurisdictional issues of FECA coverage and FTCA exhaustion, which again doom his case. ECF 5 at 9–11. As for his remaining claims of specific performance and harassment, Defendants argue that Searcy has failed to state a claim. The Court agrees, and addresses each set of claims in turn.

### A.  Tort Claims

The Court notes at the outset that Searcy has effectively conceded Defendants' argument that the Court lacks jurisdiction to hear his tort claims of negligence, intentional infliction of emotional distress, false imprisonment, and punitive damages. Despite being put on notice by the Court that he was obliged to respond to Defendants' motion to dismiss lest their arguments be deemed conceded, *see* ECF 6, Searcy's opposition to the motion to dismiss instead focused solely on defending against dismissal of his harassment claim, *see* ECF 8.[4] This is grounds for the Court to "treat the motion as conceded" with respect to those claims under Local Civil Rule 7(b). *Washington v. United States*, 248 F. Supp. 3d 185, 185 (D.D.C. 2017) (treating pro se litigant's

---

[4] The Court acknowledges that Searcy's opposition contains a heading which refers to Defendants' argument that his tort-based claims are barred for failure to exhaust his administrative remedies under the FTCA. *See* ECF 8 at 11 ("The Tort-Based Claims are Barred Because Plaintiff Did Not Exhaust his Administrative Remedies under the FTCA."). However, this section of his opposition only discusses exhaustion of his harassment complaint, rather than of any of the tort claims. The Court accordingly does not view this portion of Searcy's opposition as disputing Defendants' arguments regarding exhaustion of his tort claims.

failure to oppose motion as concession under LCvR 7(b) despite being advised by court order of this potential consequence).

Searcy's concession makes sense, given that collateral estoppel bars this Court from hearing his tort claims as a jurisdictional matter. Under the doctrine of collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). For issue preclusion to take effect, (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007). Judge McFadden previously found that he lacked jurisdiction over Searcy's tort claims arising out of nearly identical factual circumstances because the FECA "provide[d] the exclusive remedy for Searcy's claims" based on his "emotional injuries," and that to the extent his claims were not barred by the FECA, Searcy had failed to exhaust his remedies under the FTCA with respect to those tort claims. *Searcy I*, 2024 WL 2152505, at *3. Judge McFadden also found that to the extent Searcy raised intentional tort claims, those were barred by the FTCA's intentional tort exception, 28 U.S.C. § 2860(h), and that his claims for punitive damages were barred by sovereign immunity, *id.* at *3 n.2. In *Searcy II*, this Court had no difficulty concluding that those findings were subject to issue preclusion, given that they were contested by the parties, were "actually and necessarily determined" in the first case, and applying issue preclusion did not "work a basic unfairness" to Searcy given that he had a full opportunity to litigate these issues the first time around. *Searcy II*, 2025 WL 1615705, at *6.

The Court similarly finds that Searcy may not again "relitigat[e] . . . the precise issues of jurisdiction adjudicated" in his first two suits. *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987). First, two of his claims are identical to those he brought in the initial case—negligence and punitive damages—and the Court easily finds that Judge McFadden's decision on jurisdiction over those claims binds Searcy again in this case. *See GAF Corp. v. United States*, 818 F.2d 901, 912 n.72 (D.C. Cir. 1987) ("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merit[s] so as to make the case *res judicata* on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims."). Nor has Searcy identified any "developments" that might have "cure[d] the jurisdictional deficiency" such that he is able to "relitigat[e] . . . the precise issue of jurisdiction that led to the initial dismissal" of these claims. *Id.* at 912–13. And although Searcy brings two new intentional tort claims—for intentional infliction of emotional distress and false imprisonment—that he did not raise in his first case, Judge McFadden's decisions regarding the scope of FECA coverage over Searcy's emotional injuries, the extent of his FTCA exhaustion, and the FTCA's failure to waive sovereign immunity over his intentional tort claims, all serve to bar the Court's jurisdiction over these claims as well. *See Allen*, 449 U.S. at 94 (noting that collateral estoppel "may preclude relitigation of the issue in a suit on a different cause of action"); *see also Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002) ("[I]f a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged."). The Court again lacks subject-matter jurisdiction over Searcy's tort claims.

### B. Specific Performance Claim

Searcy also brings a claim for "specific performance." ECF 1 ¶¶ 53–54. In the relevant paragraphs of his complaint, he mentions his AWOL charges and the fact that he was required to "sign a contract to perform excel spread sheet functions within the" RD Innovation Center. *Id.* While Searcy's claim is somewhat difficult to understand, Defendants construe the complaint as bringing a breach of contract claim, and the Court does the same, given that specific performance is a remedy for breach of contract, rather than an independent ground for relief. *See* ECF 5 at 15; *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1110 (D.C. Cir. 2022) (describing specific performance as a "classic contractual remedy"). This reading of the complaint is bolstered by the fact that Searcy expressly requests the remedy of money damages for this claim. *See* ECF 1 ¶ 54 (requesting damages of $962,000).

Defendants argue Searcy's complaint must be dismissed because it "fails to state a breach of contract claim" because it is, in essence, "stat[ing] a legal conclusion—that he was required to sign a contract—without presenting factual allegations to support whether any of the elements" of breach of contract "have been met." ECF 5 at 16. Defendants also argue that to the extent that Searcy has stated the existence of a contract or its breach, this Court would lack jurisdiction to hear these claims under the Tucker Act. *See Crowley Gov't Servs., Inc.*, 38 F.4th at 1106 ("We have interpreted the Tucker Act to confer exclusive jurisdiction over breach of contract claims against the United States seeking more than $10,000 in damages on the Court of Federal Claims.").

The Court agrees that his specific performance claim must be dismissed. Like with his tort claims, Searcy has failed to contest Defendants' arguments for dismissal on this claim and has effectively conceded them. *See* LCvR 7(b); *Washington*, 248 F. Supp. 3d at 185. And even were this not the case, the Court does not find that Searcy has stated the existence of any contractual

claim, or sufficiently alleged the existence of any breach, based on his scant, conclusory allegations as included in his complaint, opposition, and attached exhibits.

### C. Harassment and Hostile Work Environment Claim

Finally, Searcy also brings a claim for "harassment." ECF 1 at 43. Searcy's complaint is unclear as to the statutory or common-law basis for this claim, but in his opposition, which the Court may consider in order to clarify the claims of a pro se litigant, *see Ho*, 106 F.4th at 50, he frames his harassment claim as a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; *see* ECF 8 at 3–10.

Even when construed as a hostile work environment claim under Title VII, this claim must be dismissed. Defendants first argue that the claim must be dismissed because Searcy has failed to exhaust administrative remedies, ECF 5 at 14, but Searcy claims that he sufficiently exhausted this claim with USDA's EEO office, ECF 8 at 11–12, and provides a copy of a right-to-sue letter from USDA, *see* ECF 8-2 at 84–89. While exhaustion of remedies is a requirement under Title VII, it is not a jurisdictional one, *see, e.g.*, *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011), and the Court therefore dismisses the case on Defendants' alternative ground that, even if Searcy had exhausted, he nevertheless fails to state a claim under Title VII, *see Panarello v. Bernhardt*, 788 F. App'x 18, 19 (D.C. Cir. 2019) (assuming "without deciding that [the plaintiff] exhausted her claims before the agency," and proceeding to address plaintiff's claims on the merits).

To prevail on a hostile work environment claim under Title VII, Searcy must show that USDA "subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). There is a "high" bar for demonstrating a hostile work

environment under Title VII, and Searcy's allegations, accepted as true for the purpose of this motion, do not state a plausible claim. *Bajaj v. Turner*, 778 F. Supp. 3d 151, 191 (D.D.C. 2025). First and foremost, he does not plausibly allege that any of the actions he was subjected to over the course of his reassignments included any "nexus to" his protected categories under Title VII. *Id.*; *see also id* (noting that even "harsh, rude, and demeaning conduct, even if troubling, is not alone sufficient" to mount a claim, "especially when much of the conduct is disconnected from the plaintiff's protected status"); *Elam v. Bd. of Trs. of Univ. of D.C.*, 530 F. Supp. 2d 4, 23 (D.D.C. 2007) ("[A]nti-discrimination laws do not prohibit all workplace harassment, only harassment motivated by a discriminatory criterion."). In his opposition, Searcy mentions that his job duties prior to his reassignment involved advocacy and outreach to minority groups on behalf of USDA, and his exhibits to his complaint mention that he is a Black man, *see* ECF 8-2 at 84, but nowhere in his complaint or his opposition does he allege that he was being harassed *because* of a protected status—indeed, nowhere does he mention a protected status at all, *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (requiring that the hostile-work-environment plaintiff "must always prove that the conduct at issue . . . actually constituted *discrimination* because of" the employee's protected status).

And even had Searcy alleged that his treatment was due to a protected characteristic, his treatment would nevertheless fail to qualify as sufficiently "severe" to make out a hostile work environment claim. *Oncale*, 523 U.S. at 78. The conduct as alleged consists of work-related actions by supervisors regarding his assignments and duties, rather than severe "discriminatory intimidation, ridicule, and insult" that "permeated" the workplace, *id.*, and courts have found similar conduct "[in]sufficiently intimidating or offensive in an ordinary workplace context" to state a hostile work environment claim, *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 93–94 (D.D.C.

11

2009) (finding allegations of disparaging remarks, criticisms of work, removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management were not sufficient to state hostile work environment claim); *see also Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (finding that exclusion from informal chain of command, close monitoring of work, missed opportunities for high-profile assignments, and reassignment to a different unit "simply lack[ed] the severity that is required to establish a hostile work environment"). Searcy has therefore failed to state a claim for a hostile work environment under Title VII and this claim must also be dismissed.

*   *   *

For the foregoing reasons, Searcy's claims must be dismissed. The Court lacks jurisdiction over Searcy's tort claims, and he fails to state a claim for breach of contract or a hostile work environment under Title VII. Further, the dismissal of Searcy's Title VII and breach of contract claims—addressed on the merits—will be with prejudice. He has now brought three different complaints based on largely the same factual allegations, no version of which supports a claim to relief on these counts. Searcy also filed an opposition in this case with additional factual content, but did not "identify any new claims or allegations that would cure the defects" that Defendants had identified in his harassment and contract claims. *Whiting v. AARP*, 637 F.3d 355, 365 (D.C. Cir. 2011). Dismissal of these claims with prejudice is therefore appropriate. *Id.* The Court encourages Searcy to reconsider filing duplicative actions regarding these same facts, circumstances, and legal issues. Courts are empowered to issue an injunction requiring pro se parties to seek leave of court to file new cases, and may do so when a Plaintiff makes duplicative and frivolous filings. While the Court does not take that approach here, another may do so in the future.

Accordingly, Defendants' motion to dismiss, ECF 5, is **GRANTED**, and Searcy's claims are **DISMISSED**. A separate order accompanies this memorandum opinion.

    **SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: April 14, 2026